IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19 CV 28

| | | |
|---|---|---|
| TUSHKAHUMOC XELUP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| ROBERT TODD WHITE, MARK | ) | |
| GERBINO, CHEROKEE COUNTY | ) | |
| SHERIFF DEPARTMENT, DERRICK | ) | |
| PALMER, CHEROKEE COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 5), which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Having carefully considered the Motion, the parties' filings, and applicable authorities, the undersigned respectfully recommends that the Motion be granted.

I.  Factual Background

Viewing the allegations in the light most favorable to Plaintiff, the Complaint alleges as follows:

Plaintiff Tushkahumoc Xelup and his spouse, Allison DeVante ("DeVante") have four children. In early September 2015, they lived in Cherokee County but were planning to relocate to Rhode Island. At some point,

they travelled to Rhode Island, returning home on September 6, 2015. Pl.'s Compl. (Doc. 1) at 8.

Three days later, on September 9, 2015, DeVante left Plaintiff and their children at home in Cherokee County. Though DeVante claimed to be going to visit her sister in Asheville before the move to Rhode Island, Plaintiff alleges DeVante intended to abandon the family. Id.

On September 15, 2019, while Plaintiff was at home packing for the move to Rhode Island, Robert Todd White ("White") and Mark Gerbino ("Gerbino"), who Plaintiff appears to allege were law enforcement officers associated with the Cherokee County Sheriff's Office, came to Plaintiff's home. White informed Plaintiff that he had a temporary restraining order that required White to take custody of three of Plaintiff's children, ages 16, 14, and 4. Only two of the children were at home at the time; Plaintiff's 4-year-old daughter was visiting friends in Georgia with Plaintiff's eldest daughter, who was 18 years of age. Id. at 8-9. Plaintiff protested but did release the two children after being threatened with arrest. Id. at 9.

Throughout that evening, White repeatedly called Plaintiff and instructed him to travel to Georgia and return with his 4-year-old daughter, to which Plaintiff responded by promising to deliver the child to her mother when the child returned. Id.

Over the next several days, White continued to call Plaintiff's phone and

threaten Plaintiff with arrest if Plaintiff did not bring the child back from Georgia. In addition, White repeatedly came to Plaintiff's house, "beating on the door, parking for long periods of time in the driveway and shinning [sic] the light at the house." Id.

On September 16, 2015, Plaintiff's 18-year-old daughter left Georgia with other family members (apparently including Plaintiff's 4-year-old daughter) and travelled to Tennessee. Id.

On September 19, 2015, Plaintiff contacted his 18-year-old daughter and instructed her to bring his 4-year-old daughter home so that the child could be delivered to Plaintiff's wife in Asheville. Id.

Plaintiff's 18-year-old and 4-year-old arrived home the next day, September 20, 2015, at which point Plaintiff drove his 4-year-old daughter to a police substation in Asheville near where DeVante was located. Id. at 10. Plaintiff informed the officers in Asheville that he was there to deliver the child and also advised that DeVante "had been declared mentally incompetent by the Veterans Administration." Id. An officer responded by telling Plaintiff that the officers could not assist in delivering a child to an incompetent person and instructed Plaintiff to return to Cherokee County and to make "them" (presumably meaning Cherokee County authorities) aware of that information. Id.

Plaintiff returned home with his daughter. Shortly thereafter, White

came to Plaintiff's home and "told [Plaintiff] that he was going to jail" for transporting his daughter between states. Id.

Plaintiff questioned White's authority to arrest him and White responded that he was "making the arrest on [his] own authority, because [he had] proof." Id. Plaintiff cautioned White against this action and warned him that a "false arrest would bring repercussions." Id. at 11. Nonetheless, Plaintiff was handcuffed by Gerbino and driven to the police station where he was fingerprinted and "given a $15,000.00 bond for crossing state lines and kidnapping." Id.

On Monday, September 21, 2015, Plaintiff suffered severe medical issues while in custody. Id. Plaintiff alleges he was recovering from open heart surgery, began having kidney spasms and chest pains, and was rushed to the hospital where he was "forced to ingest heart medicine, blood pressure medicine and other unknown substances in violation of cultural and traditional rights." Id.

On September 25, 2015, Plaintiff made an appearance in court. A hearing was held, at which Plaintiff's 18-year-old daughter testified. Following her testimony, "the judge found White's proof of interstate kidnapping to be false and without merit … and dismissed all charges, including the [temporary restraining order]" and Plaintiff was released. Id.

On September 29, 2015, a photo of Plaintiff and a description of his arrest

were published in a local newspaper.  Id. at 12.[1]

## II. Plaintiff's Other Actions and Relevant Procedural History[2]

Plaintiff has filed three previous actions against the same defendants and based on the same transactions and occurrences as those set forth in the current Complaint.

### A. Case #1— 1:17-CV-80-MR-DLH

On February 24, 2017, Plaintiff filed a complaint in the United States District Court for the District of Columbia (1:17-CV-334).  At the same time, Plaintiff filed a motion for leave to proceed in forma pauperis. The case was then transferred to this district. Plaintiff's motion for leave to proceed in forma pauperis was denied without prejudice by order dated March 24, 2017 and Plaintiff was directed to file an Amended Application within 30 days.  Plaintiff failed to pay the requisite filing fee or to file an Amended Application as required and therefore the case was dismissed without prejudice on May 1, 2017.

### B. Case #2—1:17-CV-2048-UNA

On October 4, 2017, Plaintiff filed a new action in the District of

---

[1] The exhibits attached to the Complaint refer to Plaintiff as "Joreal Devante." (Doc. 1-2).

[2] The court may properly consider these filings, which are matters of public record. Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Columbia. He also filed a motion for leave to proceed in forma pauperis. By Order filed on November 17, 2017, the Motion was denied and Plaintiff's action was dismissed without prejudice. The Order advised Plaintiff that he could seek to reopen the matter by way of a motion and either tendering the applicable $400 filing or submitting a proper IFP application. However, no subsequent filing appears on the docket in that matter.

### C. Case #3— 1:18-CV-265-MR-DLH

On September 17, 2018, Plaintiff filed a third action, this time originally in this district. He also filed a motion to proceed in forma pauperis. On November 6, 2018, the Motion was denied without prejudice and Plaintiff was ordered either to file an Amended Application or pay the required filing fee. Plaintiff filed an Amended Application, but that application was denied as being improper and Plaintiff was directed to pay the required filing fee within 30 days.[3] Plaintiff failed to do so and therefore this case was dismissed without prejudice on December 13, 2018.

### D. The Current Case

In the instant case, Plaintiff filed his Complaint (Doc. 1) on January 28, 2019.[4] Defendants Robert Todd White, Mark Gerbino, Cherokee County

---

[3] Plaintiff appealed this ruling, but his appeal was dismissed by the Fourth Circuit for failure to prosecute.

[4] Plaintiff did not submit a motion seeking to proceed in forma pauperis and instead

Sheriff Department, Derrick Palmer, and Cherokee County ("Defendants") filed their Motion to Dismiss (Doc. 5) and a memorandum in support (Doc. 6) on March 8, 2019. Plaintiff responded (Doc. 7) and Defendants filed notice that they would not be filing a reply (Doc. 8).

## III. Legal Standard

When presented with a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must determine whether the complaint on its face states a plausible claim for relief. See Francis v. Giacomelli, 588 F. 3d 186, 189, (4th Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 670 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). That is, while "detailed factual allegations" are not required, a claim must contain sufficient factual allegations to support the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Consumeraffairs.com, 591 F.3d at 256. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to

---

paid the filing fee on February 5, 2019.

survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. In this regard, the court accepts the well-pled allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Consumeraffairs.com, Inc., 591 F.3d at 255. The court, however, is not required to accept as true "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Id.; see Giacomelli, 588 F.3d at 192.

## IV. Discussion

Plaintiff's Complaint contains the following claims for relief:

1. Violations of 42 U.S.C. § 1983: Arrest
2. Violations of 42 U.S.C. § 1983: Detention and confinement
3. Violations of 42 U.S.C. § 1983: Strip search
4. Violations of 42 U.S.C. § 1983: Refusing or neglecting to prevent
5. Malicious Abuse of Process
6. False Arrest and Imprisonment

Pl.'s Compl. (Doc. 1) at 13-19.

In their Motion to Dismiss, Defendants raise the single argument that Plaintiff's action is barred by the statute of limitations. Defs.' Br. (Doc. 6) at 4. Plaintiff filed an objection (Doc. 7), but that filing did not address Defendants' argument. See Sasser v. Safe Home Sec., Inc., No. 1:18CV746,

2019 WL 3858607, at *5 (M.D.N.C. Aug. 16, 2019) (failing to respond to an argument constitutes an abandonment of a claim) (collecting cases).

Nonetheless, and particularly in light of Plaintiff's pro se status, the undersigned will analyze the merits of Defendants' Motion.

In an action brought under 42 U.S.C. § 1983, federal courts apply the forum state's statute of limitations. Wallace v. Kato, 549 U.S. 384, 387 (2007); Owens v. Okure, 488 U.S. 235, 240-41 (1989). In North Carolina, the statute of limitations for the analogous common-law action, personal injury, is three years. DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) ("In cases brought under Section 1983, we apply the statute of limitations for personal injuries of the state in which the alleged violations occurred"); N.C.G.S. § 1–52.[5]

Federal law determines when the statute of limitations begins to run for purposes of a Section 1983 claim. Brooks v. City of Winston–Salem, 85 F.3d 178, 181 (4th Cir.1996). Specifically, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Maryland House of

---

[5] To the extent Plaintiff's claims for malicious abuse of process and false arrest and imprisonment are not brought pursuant to 42 U.S.C. § 1983, the applicable statute of limitations is still three years. See Gaines v. Tomasetti, No. 1:09-CV-217-RJC, 2012 WL 1441339, at *4 (W.D.N.C. Apr. 26, 2012) ("Under N.C. Gen. Stat. § 1–52(13), the statute of limitations for claims against public officers acting under color of office is also three years").

Correction, 64 F.3d 951, 955 (4th Cir.1995) (citing <u>United States v. Kubrick</u>, 444 U.S. 111, 122-24 (1979)).

Here, Plaintiff alleges that he was wrongfully arrested on September 20, 2015, that the charges against him were dismissed on September 25, 2015, and that a photo of Plaintiff and a description of his arrest were published in a local newspaper on September 29, 2015. Pl.'s Compl. (Doc. 1) at 7-11. Accordingly, Plaintiff possessed sufficient facts about the alleged harm done to him no later than September 29, 2015, such that the three-year statute of limitations applicable to his claim ran on September 29, 2018. Because Plaintiff filed the instant action approximately four months later, on January 28, 2019, his action is time-barred, unless the limitations period was tolled.

The principles governing this analysis were described in <u>Williams v. Cathy</u> as follows:

> When a federal cause of action is governed by a state's statute of limitations, federal courts should use state tolling provisions. *Wright v. Durham County Jail and Staff,* 2002 WL 737730 (M.D.N.C .2002), *citing Beck v. Caterpillar, Inc.,* 50 F.3d 405 (7th Cir.1995); *South Star Funding, L.L.C. v. Warren, Perry & Anthony,* 445 F.Supp.2d 583 (E.D.N.C.2006). North Carolina Rule of Civil Procedure 41(b) provides in pertinent part:
>
>> Unless the court in its order for dismissal otherwise specifies, a dismissal under this section ... operates as an adjudication upon the merits. If the court specifies that the dismissal of an action commenced within the time prescribed therefor, or any

> claim therein, is without prejudice, it *may* also specify in its order that a new action based on the same claim may be commenced within one year or less after such dismissal.
>
> N.C.G.S. § 1A–1, Rule 41(b) (emphasis provided).

Rule 41(b) "provides that a new action may be filed within a year of an involuntary dismissal of a timely first action *if the court so specifies* and if the court specifies that the dismissal of the first action was without prejudice." *Burgess v. Equilink Corp.,* 652 F.Supp. 1422 (W.D.N.C.1987), *affirmed* 828 F.2d 17 (4th Cir.1987), *quoting Evans v. Chips,* 56 N.C.App. 232, 236, 287 S.E.2d 426 (1982).; *accord 84 Lumber Co. v. Barkley,* 120 N.C . App. 271, 272, 461 S.E.2d 780, 782 (1995). In fact, it is the "[plaintiff's] responsibility to convince the ... court[ ] to include in the order or opinion a statement specifying that plaintiff had an additional year to refile." *Clark v. Velsicol Chem. Corp.,* 110 N.C.App. 803, 809, 431 S.E.2d 227, 230 (1993), *affirmed per curiam* 336 N.C. 599, 444 S.E.2d 223 (1994). Where a civil action has been involuntarily dismissed without prejudice, the plaintiff will not be entitled to additional time to refile where the order did not also specify that he was so entitled. *Harter v. Vernon,* 139 N.C.App. 85, 89, 532 S.E.2d 836, 839 (2000), *appeal dismissed and disc. review denied* 353 N.C. 263, 546 S.E.2d 97 (2000), *certiorari denied* 532 U.S. 1022, 149 L.Ed.2d 757 (2001); *Jarman v. Washington,* 93 N.C.App. 76, 78, 376 S.E.2d 252, 253 (1989).

<u>Williams v. Cathy</u>, No. CIV. 3:08CV65, 2008 WL 2277544, at *3 (W.D.N.C. June 2, 2008).

In this matter, Plaintiff's prior cases were each filed within the original limitations period; Case #1 was filed on February 24, 2017, Case #2 was filed

on October 4, 2017, and Case #3 was filed on September 17, 2018.

However, the dismissal Orders in those cases did not include any provision indicating that the limitations period was being tolled or extended. See 1:17-CV-80-MR-DLH (Doc. 6); 1:17-CV-02048-UNA (Doc. 3); 1:18-CV-265-MR-DLH (Doc. 9). Plaintiff did not appeal the Orders and did not ask for the Orders to be amended. See Clark, 110 N.C. App. at 809.

As a result, the limitations period for Plaintiff's claims was not tolled by Rule 41(b), and his action is now time-barred.

## V. Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 5) be **GRANTED** and Plaintiff's complaint be **DISMISSED**.

Signed: October 4, 2019

*W. Carleton Metcalf*
W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within fourteen (14) days of service of same. Responses to the objections must be filed within fourteen (14) days of service of the objections. Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).